IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEGGY J. MORRISON, | : | CIVIL ACTION NO. **1:CV-07-1912** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Peggy J. Morrison, is seeking review of the decision of the Commissioner of Social Security (Commissioner) that denied her claim for Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act). 42 U.S.C. §§ 401-433.

## I.   PROCEDURAL HISTORY.

On May 5, 2006, Plaintiff protectively filed an application for a period of disability and DIB alleging disability since February 15, 2006, due to chronic back pain, lower extremity pain and numbness, urinary incontinence, and symptoms of depression causing limitations in lifting, carrying, sitting, standing, walking, climbing, bending, task persistence and pace, and activities of daily living.[1] (R. 12, 16, 82). The state agency denied her claim initially on August 3, 2006. (R. 12). Plaintiff filed a timely request for a hearing (R. 12) and a hearing was held before an Administrative Law Judge (ALJ) on May 30, 2007. (R. 195-242). At the hearing, Plaintiff, represented by counsel, and a vocational expert (VE) testified. (R. 195-242). Plaintiff was denied benefits pursuant to the ALJ's decision of June 7, 2007. (R. 12-19).

Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 7-8).

---

[1] At the ALJ hearing, the claimant, through her representative, amended the alleged disability onset date to October 31, 2005. (R. 12).

Plaintiff's request was denied on September 22, 2007 (R. 3-5), thereby making the ALJ's decision the "final decision" of the Commissioner. 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 9 and 10).

## II.   STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.   ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability

benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then, the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 13-19). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful work since her alleged disability onset date, October 31, 2005. (R. 14). At step two, the ALJ concluded that Plaintiff's lumbar disc disease was a severe impairment within the meaning of the Regulations. (R. 14). At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal the requirements under the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (R. 15). The ALJ paid particular attention to Listing 1.04(A),

3

but found that Plaintiff failed to meet the listing requirements.  (R. 15).

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work.  (R. 18).  At step five, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform work with exertional restrictions.[2]  (R. 15).  The ALJ determined that there are a significant number of jobs in the regional and national economy that Plaintiff can perform.[3]  (R. 18).  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (R. 19).  20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.   BACKGROUND.

### A. Factual Background.

Plaintiff was forty-seven years old on her alleged disability onset date and is considered a "younger person" under the Regulations.  (R. 15, 40); 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff graduated high school and worked with the food service at a vocational-technical school during high school.  (R. 201-202).  She has past relevant work experience as a cashier, machine fastener, and hand packager.  (R. 123).  Plaintiff has attempted to return to work after the alleged disability onset date, however she has taken a medical leave twice and has had surgery.  (R. 203-207).  Plaintiff also has not been released to work since having the lumbar laminectomy surgery.  (R. 207).

Plaintiff testified that she only worked for a month and a half when she returned to

---

[2]  Specifically, the ALJ found that Plaintiff retained the RFC to frequently lift ten pounds, occasionally lift twenty pounds, stand, walk and sit for six hours, with a sit/stand option, push and pull as much as she can lift and carry, occasionally climb stairs, never climb ropes, ladders or scaffolds, occasionally balance, stoop, kneel and crouch, never crawl, with occasional exposure to extreme heat, cold, humidity, and contact with wet/water/liquids, and could never work in high exposed places or around fast moving machinery on the ground.  (R. 15).

[3]  The ALJ found that Plaintiff is capable of performing work based on the VE's testimony, which indicated that given all of the Plaintiff's factors she would be able to perform the requirements of representative occupations such as small production assembler (55,000 jobs nationally and 330 regionally) and call-out operator (40,300 jobs nationally and 330 regionally).  (R. 18).

work the first time because she had trouble with her back and could not even walk straight. (R. 204). Plaintiff took about a one month medical leave as a result of this and then returned to work again before having surgery . (R. 205). Before the surgery, while the plaintiff was working, she had limits on lifting objects but still did a lot of bending. (R. 205). Each time that the plaintiff returned to work she was released to return by a doctor, except when she had the surgery performed. (R. 206).

During the day, Plaintiff eats breakfast, watches television and lets the dogs out. (R. 226). Plaintiff also stated that she walks around with the dogs in the yard and attempts to walk a little further each day. (R. 227). Plaintiff will help with the dishwashing and laundry if her husband gets the clothes out of the dryer (R. 227), but will rest most of the afternoon by laying on her elevated bed. (R. 228).

Vocational expert, Brian Bierly, testified based on the *Dictionary of Occupational Titles*. (R. 232-242). The VE stated that Plaintiff is a younger person with a high school education or more. (R. 234). Plaintiff's past relevant work as a cashier, machine fastener, machine packager, and machine feeder are all classified as unskilled work.[4] (R. 123, 235).

The ALJ asked the VE to hypothetically consider an individual with the RFC to perform work at the light duty exertional base with normal breaks, occasionally climbing stairs, never climbing ropes, ladders, scaffolding, or poles, occasionally balancing, stooping, kneeling, crouching or squatting, never crawling, with occasional exposure to extreme cold,

---

[4] Plaintiff's past relevant work as a cashier is also classified as work both customarily and actually performed at a light exertional level. (R. 123). The past relevant work as a machine fastener is classified as work customarily performed at a light exertional level, but Plaintiff actually performed the work at a medium exertional level. (R. 123). The VE changed information regarding Plaintiff's past relevant work that was entered into Exhibit number 14E. The VE informed the ALJ during his testimony to delete occupation 3, hand packager, and to add machine packager and machine feeder as occupations listed as past relevant work. (R. 235). The VE added that machine packager is classified as unskilled work that is both customarily and actually performed at a medium exertional level. (R. 235). Also, the VE noted that machine feeder is classified as unskilled work that is both customarily and actually performed at a heavy exertional level. (R. 235).

extreme heat, extreme humidity, concentrated contact with wet, water, or liquids and with no work in high exposed places or work around fast moving machinery on the ground. (R. 235-36). The VE testified that with these limitations, the Plaintiff would be able to perform her past relevant work as a cashier or as a machine fastener. (R. 236). The VE also testified though that all other past relevant work would not be able to be performed by the Plaintiff under these limitations. (R. 236).

The ALJ then asked the VE to assume that same hypothetical with the addition of a sit/stand option. (R. 236). The VE stated that such an individual would not be able to perform any of the Plaintiff's past relevant work. (R. 237).

The ALJ proceeded to ask the VE to consider a hypothetical individual with the same age, education and work experience as the Plaintiff and the same RFC's that were given, in the same order. (R. 237). The VE indicated that this hypothetical individual would not be able to perform any other skilled or semi-skilled work that would require transferability of skills. (R. 237).

The ALJ asked the VE to further consider the extent to which the full range of unskilled work would be reduced by the RFCs given and to provide an example of work including the number of jobs in the occupation in the region, several regions, and national economy.[5] (R. 238). The VE indicated that with the first RFC the light, unskilled base would be eroded by fifteen percent. (R. 238). The occupation of sales attendant was given as example of a job remaining, with numbers within the region of 450 and numbers in the national economy of 72,500. (R. 238). With the addition of the sit/stand option in the second RFC, the VE testified that the erosion of the light, unskilled base would be fifty percent. (R. 238). The example given of an occupation that would still remain was a small

---

[5] The VE stated that he would be defining the term region as including a fifty mile radius in the Greater Cumberland County Area (which does include the Plaintiff's residence) and several regions as including the national economy. (R. 237). The VE also stated that the sources that his information has been taken from include Census Statistics, Department of Labor and Industry Statistics, and *The Occupational Employment Quarterly*. (R. 237).

products assembler, with numbers within the region of 330 and numbers in the national economy of 55,000.  (R. 238).  The ALJ next posed a third RFC which essentially was the same as the specifications in the first RFC with a restriction to sedentary work.  (R. 239).  The VE stated that the sedentary unskilled base would be eroded ten percent.  (R. 239).  An example of an occupation that would remain is call out operator with numbers within the region of 330 and numbers of 40,300 in the national economy.  (R. 239).  The fourth and last RFC that the ALJ posed consisted of the addition of a sit/stand option so that the situation was less than the full range of sedentary and the sit/stand option is at the option of the Plaintiff.  (R. 239).  The VE stated that the erosion would now be fifty percent and that the occupation of call out operator would still remain with the same numbers.  (R. 239).

### B. Medical Background.

Plaintiff underwent a "Physical Therapy Initial Evaluation & Plan of Care" at Alexander Spring Rehab, Inc. on September 14, 2005 at the referral of her primary care physician, Joseph Pion, D.O.  (R. 127).  The plaintiff was diagnosed with low back pain with left sacroiliac joint dysfunction and right low back muscle spasm with impaired reflex and function.  (R. 127).  The Plaintiff was given a treatment plan at the rehab center with a frequency of two times per week for four to six weeks.  (R. 127).  The treatment plan included training and manual therapy techniques to improve spine and joint protection, soft tissue extensibility, joint mobility and function, and to decrease pain.  (R. 127).  The plan also included exercises to increase range of motion and flexibility, patient/caregiver education, and physical agents/mechanical modalities to decrease pain and inflammation.  (R. 127).

On October 7, 2005 Plaintiff underwent a lumbar Magnetic Resonance Imaging (MRI) scan at the Carlisle Regional Medical Center.  (R. 125).  This scan showed posterior central disc extrusion at L4-5, degenerative disc changes at L5-S1, and was otherwise normal.  (R. 125).  The posterior central disc extrusion at L4-5 was noted as causing mild to moderate spinal stenosis.  (R. 125).  It was also noted that there was no definite neural foramen narrowing and at either side of the L4-5 intervertebral disc there were bone

7

marrow signal changes, consistent with active degenerative disc disease and can be the source of localized back pain for the Plaintiff.  (R. 125).  At L5-S1, there was mild disc dehydration with the annulus bulging mildly but no spinal stenosis or neural foramen narrowing.  (R. 125).

After the treatment plan was completed at Alexander Spring Rehab, Inc., Christopher K. Fisher, P.T., provided an assessment that the Plaintiff's body mechanics have improved after instruction, but repeated bending and lifting at work re-aggravated her back.  (R. 130). Plaintiff was discharged on October 13, 2005 because she did not schedule additional visits, but was given a home program of flexibility exercises and spasm management.  (R. 130).

Dr. Pion then referred the Plaintiff to Dr. Balog, who performed an evaluation on December 1, 2005.  (R. 135).  Dr. Balog diagnosed degenerative disc disease at L4-5, L5-S1 and noted associated back pain, but no signs of nerve impingement.  (R. 135).  Dr. Balog also noted that the pain has been seemingly worse for the Plaintiff when participating in activities and has caused her to not work for the previous three weeks.  (R. 135).  The Plaintiff had no symptoms that would radiate down beyond the knees of either side.  (R. 135).  The Plaintiff has unsuccessfully tried therapy, medications, and muscle relaxants to ease the pain.  (R. 135).

Dr. Balog's physical exam noted that Plaintiff does not walk with any assistive devices and she can heel and toe walk.  (R. 135).  Upon physical examination, the plaintiff had a negative straight leg raise to ninety degrees bilaterally,[6] no restricted hip rotation, no atrophy of the lower extremities, but had moderate paraspinous tenderness of the lower lumbar spine with no deformity.  (R. 135).  Dr. Balog advised Plaintiff to have a minimal restriction on activities and to return to work without orthopedic restrictions as of December 12, 2005.

---

[6] The straight leg-raising test (SLR) is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve.  With the knee fully extended, the physician raises the involved leg from the examining table.  A positive SLR test requires reproduction of pain at an elevation of less than 60 degrees.  A positive SLR is the single most important sign of nerve root pressure produced by disc herniation.  Andersson and McNeil, *Lumbar Spine Syndromes*, 78-79 (Springer-Verlag Wein, 1989).

(R. 135).

Instead of returning to work, the Plaintiff saw Dr. Moore, a neurosurgeon, on January 31, 2006 for an evaluation of low back pain and bilateral leg pain with tingling paresthesias in the feet and toes.  (R. 151).  Dr. Moore indicated that an examination of the Plaintiff's low back revealed bilateral spasm and tenderness over the left sciatic notch.  (R. 151).  Dr. Moore noted that a straight-leg raising sign was negative bilaterally and muscle testing revealed bilateral extensor hallucis longus weakness.  (R. 151).  There was no weakness in plantar flexion or dorsiflexion of the feet when Plaintiff was asked to heel and toe walk.  (R. 151).  Based on his evaluation, Dr. Moore recommended that Plaintiff consider a lumbar laminectomy and decompression at the L4-5 and L5-S1 areas.  (R. 151).  Plaintiff followed Dr. Moore's recommendation and had a lumbar laminectomy and decompression performed at L4-5 and L5-S1 on February 15, 2006.  (R. 137).

Plaintiff met with Dr. Moore for post-operative visits in August and November of 2006 and in February 2007.  (R. 177-179).  Dr. Moore indicated that the Plaintiff improved over her preoperative state, but still had muscle spasm in the back, some aching down the legs, and incontinence.  (R. 177).  Dr. Moore also indicated that at the next visit following the February visit he will schedule an appointment with a urologist to determine whether or not there is any further procedure that can be performed to help her with her incontinence. (R. 177).

On May 19, 2007, Dr. Moore completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  (R. 188-191).  On this statement, Dr. Moore indicated that the Plaintiff could occasionally and frequently lift/carry less than ten pounds, could stand or walk less than two hours in an eight-hour workday, and must periodically alternate between sitting and standing to relieve pain or discomfort.  (R. 188-189).  Dr. Moore actually placed many limitations on the Plaintiff in this statement: no climbing, balancing, kneeling, crouching, crawling, and limited exposure to temperature extremes, humidity, hazards, and fumes, odors, chemicals and gases.  (R. 189, 191).

**V.   DISCUSSION.**

Plaintiff argues that the ALJ erred in the following ways: (1) by failing to find that the Plaintiff met or equaled a listing within Appendix 1, Subpart P; (2) by failing to give weight to Dr. Moore's opinion and substituting her own instead; and (3) by failing to find Plaintiff credible.  (Doc. 9 at 3-5).

*A.  Whether the ALJ erred by failing to find that the Plaintiff met or equaled a listing within Appendix 1, Subpart P.*

The Plaintiff alleges that she clearly has objective documentation showing that she had an impairment that met or equaled the Listing of Impairments in 20 C.F.R., Pt. 404, Subpt. P, App.1; specifically Section 1.04(C), Disorders of the Spine.[7]  (Doc. 9 at 7-9).  To meet the criteria of 1.04(C), the Plaintiff must show a disorder of the spine "resulting in compromise of a nerve root or the spinal cord" with:

> C.  Lumbar spine stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

20 C.F.R. Pt. 404, subpt. P, App. 1, Listing 1.04(C).

The burden is on the Plaintiff, who is "in a better position to provide information," to show a disability.  *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987).  Here, the ALJ found that the Plaintiff did not meet her burden of proving that she met the criteria of Listing 1.04.  It is the claimant's burden to prove that her condition meets or equals the specific clinical requirements of a listed impairment before he can be considered to be disabled *per se* without consideration of vocational factors, such as age, education, and work experience.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citations omitted).  To be entitled to disability benefits, a claimant must show that all, not just some, of the criteria for a listing are met.  *Zebley*, 493 U.S. at 530.

---

[7]  The objective documentation that the Plaintiff is claiming comes from Dr. Moore's operative notes showing lumbar stenosis at L4-5 and L5-S1 with radiating low back pain, numbness in her toes, severe urinary incontinence and significant spinal claudication.  (Doc. 9 at 9) (R. 137).

The Commissioner must make the legal determination as to whether an impairment meets or equals a listing. *See* 20 C.F.R. §§ 404.1527(e)(1) and (2).

Substantial evidence supports the ALJ's finding that the Plaintiff did not establish evidence of nerve root compression, motor loss, positive straight leg raising, or an inability to ambulate effectively and therefore her back impairment is not associated with medical findings required to meet Listing 1.04(A). (R. 15). Substantial evidence also supports that even though the ALJ did not mention Listing 1.04(C) specifically, the Plaintiff clearly did not meet this listing, because it has been established that the plaintiff has the ability to ambulate effectively.

The ALJ specifically referenced Exhibit 2F for support, which is the "Physical Therapy Initial Evaluation & Plan of Care" from Alexander Spring Rehab, Inc. (R. 127, 130). This exhibit showed that Plaintiff's straight-leg raising test was negative, her strength was within normal limits in her lower extremities, and her range of motion was within normal limits. (R. 127, 130).

The ALJ also referenced Exhibit 3F for support, which is the evaluation by Dr. Balog. (R. 135). Dr. Balog's notes from the physical exam include: Plaintiff walks without assistive devices, can heel and toe walk, has a negative straight leg raise to ninety degrees bilaterally, has no restricted hip rotation, and no atrophy of the lower extremities. (R. 135).

Exhibit 5F, which contains the pre-surgical and post-surgical notes from Dr. Moore was also referenced by the ALJ. (R. 151). The pre-surgical note indicates that the Plaintiff's straight-leg raising sign is negative bilaterally and when asked to heel and toe walk, Plaintiff had no weakness in plantar flexion or dorsiflexion of the feet. (R. 151). The first post-surgical note indicates that the Plaintiff has done "quite well" from the surgery, has no further significant pain down her legs, and has gradually increased her activity. (R. 150).

The last exhibit referenced by the ALJ was Exhibit 9F, which contains a post-operative note regarding a November 16, 2006 follow up visit with Dr. Moore. (R. 178). Even though the note stresses that the Plaintiff has good days and bad days, it mentions that the Plaintiff is ambulating without difficulty. (R. 178).

Plaintiff argues that the ALJ did not specifically discuss whether Listing 1.04(C) was met.  (Doc. 9 at 9).  Defendant responded to this argument by stating that the Plaintiff has overlooked the ALJ's discussion regarding the entire 1.04 listing, which noted that the Plaintiff's medical evidence failed to establish an inability to ambulate effectively.  (Doc. 10 at 11).  The exhibits referenced by the ALJ clearly show that the Plaintiff did not have an inability to ambulate effectively, which is a critical requirement of 1.04(C).  In Exhibit 3F, Dr. Balog stated that the Plaintiff walked without any assistive devices and can heel and toe walk.  (R. 135).  Exhibit 5F shows that Dr. Moore observed that Plaintiff had no weakness in plantar flexion or dorsiflexion of the feet when asked to walk on her heels and toes.  (R. 151).  Furthermore, Exhibit 9F shows that Plaintiff is "ambulating without difficulty."  (R. 178).

Therefore, the ALJ did not err in failing to find that the Plaintiff met or equaled Listing 1.04, because her decision is supported by substantial evidence provided from the exhibits.

### B.  Whether the ALJ erred by failing to give weight to Dr. Moore's opinion and substituting her own opinion.

Plaintiff states that the ALJ erred by substituting her own opinion for that of the Plaintiff's treating doctor, Dr. Moore.  (Doc. 9 at 12).  Plaintiff states that the ALJ's finding that the Plaintiff was only incapacitated for six weeks following her back surgery is inconsistent with the opinion of Dr. Moore.  (Doc. 9 at 12).  Specifically, Plaintiff states that Dr. Moore noted multiple times that the Plaintiff was disabled from work activity because she had not recovered neurological function.  (Doc. 9 at 12).

Defendant states that when the ALJ formulated Plaintiff's residual functional capacity assessment, she adopted Dr. Moore's identification of a need for a sit/stand option, postural limitations on climbing, kneeling, crouching, crawling, and stooping, and the need to avoid working at unprotected heights and at temperature extremes.  (Doc. 10 at 14-15).  Defendant also stated that the ALJ did not adopt Dr. Moore's other limitations because, guided by the regulations concerning the evaluation of medical source opinions, she found

that the medical evidence did not support them.[8]   (Doc. 10 at 15).

The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).   The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id*. at 317-18.  The ALJ is required to evaluate every medical opinion received.  20 C.F.R. § 404.1527(d).  Although she must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion.  20 C.F.R. § 404.1527(d)(3).  While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion.  20 C.F.R. § 404.1527(d).  Automatic adoption of the opinion of the treating physician is not required.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887 at *5 (E.D. Pa. Oct. 18, 2005) (quoting *Plummer,* 186

---

[8]   Specifically, defendant indicates that the ALJ found Dr. Moore's limitation to lifting less than ten pounds, and walking or standing less than two hours during a workday, was unsupported by the medical evidence before her.  (Doc. 10 at 15).

F.3d at 429 and citing *Newhouse v. Heckler*, 753 F.2d 283 (3d Cir.1985)).

Dr. Balog evaluated the Plaintiff in December 2005 and during his evaluation the Plaintiff denied any radicular signs in the lower extremities and did not demonstrate any significant abnormalities on physical examination. (R. 17). Furthermore, Dr. Balog noted that he did not think that the Plaintiff would benefit from epidural injections or surgery due to the lack of neurological signs or symptoms. (R. 17). Dr. Balog also reported that the Plaintiff could return to work without orthopedic restrictions. (R. 17, 135).

Dr. Moore evaluated the Plaintiff in January 2006, a month after Dr. Balog's evaluation, and noted that the Plaintiff described significant lower extremity symptoms, including numbness in both feet. (R. 17). When evaluating the Plaintiff, Dr. Moore found that she had some muscle spasms but did not have ambulatory problems or findings consistent with the reported numbness in her feet. (R. 17). Nevertheless, Dr. Moore indicated that the MRI pathology accounted for the Plaintiff's neurological symptoms and worsening urinary problems and recommended surgery that was eventually performed in February 2006. (R. 17).

Post-surgical notes from Dr. Moore indicate that the Plaintiff reported some improvement in pain, but continued numbness in her feet. (R. 17). There was no indication that the continued numbness in the Plaintiff's feet required additional diagnostic studies, physical therapy, or pain management. (R. 17). There are actually no subsequent records containing any clinical findings on this symptom and Plaintiff only saw Dr. Moore about every three months for fifteen minute visits after the surgery. (R. 17). Dr. Moore's assessment that limits the Plaintiff to the capability of performing a range of sedentary work was not given significant weight by the ALJ because it was based on mainly subjective complaints by the Plaintiff, rather than objective medical findings. (R. 17).

The ALJ reasoned that significant weight was not given to Dr. Moore's assessment because the restrictions that were noted, which were more than a year after surgery, were an overstatement of the Plaintiff's limitations when analyzing the limited objective findings

14

and routine and conservative followup.  (R. 17).  The ALJ stresses that there is no objective evidence of neurological deficits, ambulatory difficulties, or other clinical findings to support the lifting/carrying limitations, standing/walking limitation of less than two hours, and total postural restrictions.  (R. 17).

Therefore, there is a significant basis for a determination that the ALJ did not err in evaluating the opinion of Dr. Moore.

### C.  Whether the ALJ erred by failing to find Plaintiff credible.

In making her determination, the ALJ considered Plaintiff's credibility and determined that she was not entirely credible.  (R. 17).  When considering a claimant's subjective complaints of pain, an ALJ must engage in a two-step analysis.  First, an ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work.  *See Diaz v. Commissioner of Social Security*, 39 Fed. App'x 713, 714 (3d Cir. June 12, 2002).

At the same time, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).  Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence."  *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson,* 765 F.2d at 37).

The distinction between exertional and non-exertional limitations is discussed in 20 C.F.R. § 404.1569a.  Under that section, "[t]he classification of a limitation as exertional is related to the United States Department of Labor's classification of various jobs by various exertional levels (sedentary, light, medium, heavy, very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing and pulling." 20 C.F.R. § 404.1569a(a).  When the restrictions affect the claimant's ability to meet job demands other

than strength demands, the limitations are non-exertional.  Examples of such non-exertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering.  20 C.F.R. § 404.1569a(c).  In this case, Plaintiff alleges only exertional limitations.

The ALJ thoroughly examined all of the evidence presented to her.  She reviewed the medical records and the treating and examining physicians' notes.  She also considered Plaintiff's testimony regarding her subjective complaints and limitations pursuant to Social Security Ruling 96-7p.  (R. 16).  The ALJ considered aggravating factors, Plaintiff's use of medication and other methods of relief, functional restrictions and activities of daily living.  (R. 16).

Based on the evidence presented and the testimony at the hearing, the ALJ found the Plaintiff not entirely credible.  (R. 16-17).  "'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000).

The ALJ pointed to both medical evidence and evidence of the Plaintiff's activities of daily living which contradicted the Plaintiff's claims of total disability.  (R. 15-17).  The Plaintiff testified that she tried to go back to work on several occasions but stopped because her pain became so severe that she finally had to take a medical leave of absence.  (R. 16).  Plaintiff also testified that she had received short-term disability for about four or five months but has not received any compensation, including unemployment, since that time.  (R. 16).  However, Dr. Balog, an orthopedic specialist, evaluated her and cleared her to return to work.  (R. 16).  The Plaintiff indicated that her pain did not go away and instead she opted to have surgery in February 2006 by Dr. Moore.  (R. 16).  The Plaintiff even stated that she

had been released to return to work by Dr. Pion, her family physician, but did not return to work due to continued symptoms. (R. 16). The ALJ concluded that the evidence of the record could reasonably be expected to produce the alleged symptoms, but did not substantiate the extent of the Plaintiff's subjective complaints. (R. 17).

An ALJ may not reject outright the opinion of a treating physician on his own credibility judgment. *Plummer*, 186 F.3d at 429. Here, the ALJ did no such thing. The record contains the opinion of Plaintiff's treating physician, Dr. Moore. As discussed above, the ALJ found that the Plaintiff's impairments were severe, but not severe enough to meet or equal the criteria for establishing disability under the Regulations.

The ALJ did not "ignore" the allegations of disabling pain and symptoms. She acknowledged Plaintiff's testimony regarding the pain and symptoms. She then found the Plaintiff not wholly credible for the reasons previously stated. Thus, the Plaintiff's work activities and medical records constitute substantial evidence supporting the ALJ's determination that the Plaintiff was not fully credible.

**VI.     RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be DENIED.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 18, 2008**

17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEGGY J. MORRISON, | : | CIVIL ACTION NO. **1:CV-07-1912** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## <u>NOTICE</u>

_____NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated June 18, 2008.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        s/ Thomas M. Blewitt
                                        THOMAS M. BLEWITT
                                        United States Magistrate Judge

**Dated: June 18, 2008**